## S. N. CASTLE ESTATE, LIMITED, A CORPORATION; AND W. R. CASTLE, TRUSTEE, v. A. HANEBERG, ADMINISTRATOR OF THE ESTATE OF L. AHLO, DECEASED; H. HACKFELD & COMPANY, LIMITED, A CORPORATION, AND KANEOHE RICE MILL COMPANY, LIMITED, A CORPORATION.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 28, 1910.                    DECIDED APRIL 11, 1910.

### HARTWELL, C.J., PERRY AND DE BOLT, JJ.

EQUITY—*presentation of claim to administrator.*

> Presentation of a claim to an administrator does not of itself operate as a waiver of a lien upon the estate of the decedent.

ID.—*accounting by administrator.*

> Under the circumstances of this case equity has jurisdiction to require the administrator to account for his acts concerning property or the proceeds thereof which has come to his hands on which plaintiffs have a lien.

MORTGAGE—*after acquired property.*

> A mortgage of "all that certain rice plantation, * * * and all additions and accretions thereto or connected therewith or to be therewith connected, * * * and all other species of property part and parcel thereof or to become parcel thereof," covers lands originally leased and afterwards either purchased or newly leased, as

Castle Estate v. Haneberg, 20 Haw. 123.

well as newly acquired leasehold or fee simple lands, which are essential and appropriate to the use and operation of the plantation as a "going concern."

ID.—*assignment of mortgage notes.*

Assignment of the notes operated as an assignment of the mortgage although there was no formal assignment of the mortgage.

PLEADING—*bill in equity—multifariousness.*

A bill is not multifarious where one general right is claimed though the defendants may have distinct interests.

OPINION OF THE COURT BY DE BOLT, J.

This is an appeal by plaintiffs from a decree of a circuit judge of the first circuit sustaining defendants' demurrers and dismissing plaintiffs' bill.

The facts alleged in the bill, so far as they are material to the questions arising upon the demurrers, are, in substance, as follows:

That on May 1, 1884, one Lee Ahlo, to secure the payment of $5000 executed to W. R. Castle, trustee, a mortgage covering "all of that certain rice plantation at Kaneohe, Oahu, with the property connected set forth in the annexed schedule; also all the cane and rice business of mortgagor at Heeia, noted more fully in the annexed schedule forming a part of this mortgage;" that the schedule referred to contains a list of twenty-seven leaseholds, together with the following:

"And also the agreement and all rights, privileges and benefits pertaining to said agreement aforesaid."

"All crops, growing or to be grown on any and all parts of the premises demised as aforesaid and all additions and accretions thereto or connected therewith or to be therewith connected during the continuance hereof, all working animals, all tools and implements now there or to be thereon placed during the existence hereof and all other species of property part and parcel thereof or to become parcel thereof as aforesaid."

That this mortgage was duly recorded May 31, 1884; that from the date of the mortgage until his death, July 3, 1906,

Castle Estate v. Haneberg, 20 Haw. 123.

Ahlo continued in possession of and carried on the rice plantation; that before his death all the leases enumerated in the schedule referred to had expired, but from time to time he had acquired title, either by further leases or by purchase in fee simple, of the larger part of the premises described in the schedule, together with other property "near by," as well as working animals, tools and implements; that Ahlo thereafter executed seven mortgages to H. Hackfeld & Co., Ltd., one of the defendants, covering substantially the same property included in the original leases and also certain other lands alleged to have been subsequently acquired and used in connection with the plantation; that at all times, down to the date of his death, Ahlo recognized the Castle mortgage as a valid lien on the plantation and upon all property connected therewith, and from time to time he made payments thereon; that H. Hackfeld & Co., Ltd., as agent for Ahlo, in 1903 and 1904 respectively made two payments on the principal debt secured by this mortgage to prevent foreclosure proceedings being instituted thereon; that on August 15, 1906, defendant A. Haneberg was duly appointed administrator of the estate of Ahlo; that on August 26, 1906, the Castle Estate, assignee of the mortgage debt, duly presented its claim to the administrator, which was allowed; that the administrator was notified by the Castle Estate that it claimed a lien on the plantation and that by agreement segregated accounts were to be kept by the administrator of all moneys received from the plantation; that the administrator was authorized to sell growing crops by order of court subject to valid and existing mortgages; that this agreement on the part of the administrator has not been performed, although he has sold rice from the plantation and received therefor in cash a sum largely in excess of the amount due the Castle Estate on its claim, together with other amounts received from the sale of other personal property on the plantation; that the defendants, A. Haneberg and H. Hackfeld & Co., Ltd., confederating together in order to deprive

plaintiffs of their claim against the Ahlo estate and their lien upon the property covered by said mortgage, entered into an agreement by which H. Hackfeld & Co., Ltd., foreclosed its mortgages by a sale at public auction, at which James F. Morgan, the auctioneer, purchased the property as trustee, the real purchaser being A. Haneberg, who thereafter organized the defendant corporation, Kaneohe Rice Mill Co., Ltd., to which foreclosure deeds were accordingly executed; that plaintiffs prior to the sale notified the administrator that they proposed to take steps to establish the lien claimed by them under the Castle mortgage and to prevent the property from being sold under foreclosure of the Hackfeld mortgages; that defendants, Haneberg and H. Hackfeld & Co., Ltd., induced plaintiffs to refrain from taking such proceedings at that time by assurances that the question at issue would be submitted to the supreme court upon an agreed statement of facts; that the plaintiffs remained in ignorance of the acts of Haneberg and H. Hackfeld & Co., Ltd., respecting the foreclosure sale until about January 1, 1910, and that they have been unable to secure from defendants an agreed statement of facts upon which this matter might be submitted to the supreme court; that the accounts of the administrator are involved and incomplete, and from them plaintiffs are unable to ascertain what has become of the property upon which they claim a lien.

The bill prays that plaintiffs' mortgage be declared a superior lien on all the property in question; that defendants be required to account for the property of the estate of Ahlo, as well as all the proceeds thereof which have come to their hands and for general relief in connection with all the personal property of the Ahlo estate which has come into his possession or into the possession of any of the defendants, and that plaintiffs may have such other general relief as they may be entitled to receive.

To the bill each of the defendants interposed a demurrer, the

defendants, H. Hackfeld & Co., Ltd., and the Kaneohe Rice Mill Co., demurring upon the grounds of want of equity and multifariousness, and the defendant, A. Haneberg, demurring upon the same grounds and upon the further ground that a court of equity is without jurisdiction to compel an accounting with respect to his acts as administrator.

The demurrers were sustained upon the ground that the Castle Estate, having presented its claim to the administrator and the same having been allowed, was thereby estopped from proceeding in equity to obtain satisfaction under the mortgage.

1. The presentation of the claim by the mortgagee to the administrator and obtaining its allowance was required by statute (R. L. Sec. 1851), and was not of itself a waiver of the claim, nor did it operate as an estoppel.

The defendants in support of their contention that the presentation of the claim to the administrator operated as a waiver of the security, cite *Ching Tam She* v. *Oriental Life Ins. Co.,* 19 Haw. 663, as well as decisions from Massachusetts, New York and other jurisdictions. In the *Ching Tam She* case, the judgment creditor had no lien on the land of the decedent and after having obtained the allowance of the claim by the executrix and pending the settlement of the estate, the creditor sought to enforce the judgment by an execution sale of the land. This was inequitable as to the other claimants and the creditor was accordingly restrained. This principle of equitable estoppel which was applicable in the case cited does not apply in the case now before us, because the property, on which the plaintiffs in this case hold a mortgage, is not, by reason of such lien, available for the payment of creditors in general, except as to any surplus that might remain after foreclosure sale under said mortgage.

As held in *Estate of Kapu,* 18 Haw. 369, a secured creditor cannot be paid pro rata on his entire claim and then apply his security in payment of the balance of his claim, but such claim-

ant is entitled to be paid pro rata out of the general assets only after he shall have realized upon his security to its full extent.

We have no statute, as in Massachusetts and New York, and presumably in the other states from which decisions are cited, requiring an administrator when an estate is insolvent to report this fact to the probate court which then appoints commissioners of the insolvent estate to whom all claims are referred and who marshal them, requiring that mortgages and other liens and securities be realized upon in order to ascertain the deficiency, if any, to be allowed as an unsecured claim, and to obtain for the benefit of the estate any surplus upon a foreclosure sale, assimilating the practice and procedure in matters of bankruptcy.

2. As to the Castle mortgage covering leaseholds and fee simple lands acquired by the mortgagor subsequently to the execution of the mortgage and after the expiration of the terms of the scheduled leases, whether the same were lands previously leased by the mortgagor or other lands, but used in connection with and as part of the mortgaged plantation, the plaintiffs contend that all such leaseholds and fee simple lands are included in the mortgage of the "plantation" with its "accretions and additions, * * * and all other species of property part and parcel thereof or to become parcel thereof," and that the second mortgagee recognized this by making two payments on the Castle mortgage as agent for Ahlo after the expiration of the leaseholds, as alleged. The second mortgagee denies this effect of these payments by it as such agent and contends that as to any of its mortgages taken prior thereto it had no legal or constructive notice of an incumbrance upon any of the lands which were originally leased and afterwards either purchased or newly leased, as well as newly acquired leasehold or fee simple lands.

The bill shows that the mortgagor up to the time of his death considered all the property connected with and used as a part of the plantation was covered by his mortgage to Castle, from

time to time making payments thereon and otherwise acting on that theory, and the second mortgagee in making those two payments on the Castle mortgage as agent of Ahlo would naturally have been aware of the fact that Ahlo was so treating this mortgage. This, in equity, was enough to put the second mortgagee upon its inquiry which would not be confined to an examination of the records as to the particular lands constituting the plantation which the mortgagor had acquired subsequently to the expiration of the scheduled leases. The result of such inquiry would have shown the facts and precluded the second mortgagee from acquiring or assuming the position of a bona fide purchaser for value without notice of the prior incumbrance. But, irrespective of this phase of the question, the language and provisions of the mortgage show that it was intended to cover the "plantation" as a "going concern," which ordinarily would include all future acquired property essential and appropriate to that end.

With regard to the purpose and scope of the mortgage it will be observed that it covered, not only the "plantation" as it existed at the time the mortgage was executed, but also expressly covered all "additions and accretions thereto," as well as "all other species of property part and parcel thereof or to become parcel thereof." Thus contemplating that in the operation of the plantation the leases, from time to time, would expire, that tools and implements by reason of use would cease to serve their purpose, and that animals and all other property necessary and proper to continue and carry on the "plantation" would ordinarily in the nature of things, have to be renewed, replaced, added to, or newly acquired, otherwise the value of the "plantation" as a security would be greatly impaired if not destroyed. At all times it remained with all its additions the same "plantation." To thus read and construe this mortgage is reasonable and natural.

3.  As to the question of multifariousness: By multifarious-

ness in a bill is meant the improper joining in one bill of·distinct and independent matters and thereby confounding them, as·the uniting in one bill matters perfectly distinct and unconnected against one defendant, or uniting several matters of a distinct and independent nature against several defendants in the same bill. But a bill is not multifarious where one general right only is claimed by the bill though the defendants may have separate and distinct interests therein. Where the case presented by the bill is so entire that it cannot be prosecuted in several suits and yet each of the defendants is a necessary party to some part of the case as stated, neither of the defendants can demur for multifariousness or for misjoinder of causes of actions, in some of which he has no interest.

When the entire case cannot be prosecuted by separate suits against each defendant, and each is a necessary party in order to obtain the full relief sought, no defendant has cause to demur to the bill for multifariousness, or for misjoinder of causes on the ground that in some of them he has no interest.

The plaintiffs seek to establish their lien against the plantation and all property connected therewith, and the mere fact that in following the property the several defendants are required to disclose his or its acts concerning it, does not render the bill multifarious. One general right only is claimed by the plaintiffs though the defendants may have separate and distinct interests therein. The bill, as we view it, is not multifarious.

*Carter* v. *Lane*, 18 Haw. 10, 12, citing *Ohera* v. *Ackerman*, 9 Haw. 597, 599, is authority for the rule that a bill is not multifarious because "several species of relief may be prayed for although each might be the subject of a separate suit."

4. It is urged on behalf of the defendant, Haneberg, that the court in probate having power to require administrators to perform their trusts, equity has no jurisdiction to require an accounting from the administrator. Plaintiffs do not merely seek to obtain an accounting from the administrator but to pro-

tect their lien on the property or its proceeds in his hands. Moreover, the bill alleges a conspiracy between the defendants Haneberg and H. Hackfeld & Co., Ltd., to deprive plaintiffs of their lien. These are matters concerning which the court in probate has no jurisdiction. The enforcement of the mortgage, or having it declared a superior lien, as well as requiring an accounting by Haneberg of his acts concerning the property which has come to his hands, and is subject to this lien, are matters within the jurisdiction of a court of equity.

5. Why W. R. Castle, trustee, has not actually assigned or does not now assign the mortgage to the Castle Estate does not appear. The assignment of the notes, however, of itself operated as a matter of law as an assignment of the mortgage and of the mortgagee's powers under it. W. R. Castle, trustee, is, therefore, improperly a party plaintiff. The bill is, however, amendable in that respect.

We are of the opinion that the bill states a cause relievable in equity, the plaintiff, the S. N. Castle Estate, Ltd., being entitled, inter alia, from the allegations of the bill, to a declaration that the mortgage of 1884 is superior as a lien to those of the defendant H. Hackfeld & Co., Ltd. The decree appealed from is, therefore, reversed and the cause remanded to the circuit judge with directions to proceed in accordance with this opinion.

*Castle & Withington, Alfred L. Castle and G. A. Davis* for plaintiffs.

*Thompson, Clemons & Wilder, Henry E. Cooper and Smith, Warren & Hemenway* for defendants.